**HALABY et, Plaintiff, v. BOARD OF DIRECTORS OF THE UNIVERSITY OF CINCINNATI, Defendants.**

Common Pleas Court, Hamilton County.

No. A-137602. Decided June 23, 1953.

Halaby & Haughey, for plaintiff.

Henry M. Bruestle, City Solicitor, Maurice W. Jacobs, Asst. Solicitor, Cincinnati, for defendants.

## OPINION

By HOY, J.:

This case is before the Court on the demurrer of the defendants to plaintiff's petition.

The petition is brief and the allegations thereof are, therefore, quoted in full.

"Plaintiff is a minor, aged 17 years, and brings this action by his father and next friend, Assad S. Halaby.

"Defendants comprise the Board of Directors of the University of Cincinnati, a Municipal University, located in Cincinnati, Ohio. Plaintiff is a student, regularly enrolled and attending classes, at the said university.

"Neither plaintiff nor his father are citizens of the United States. Plaintiff entered the United States as an immigrant

with his parents, and plaintiff's father has declared his intention of becoming an American citizen. Plaintiff's father has purchased a home and started a business within the corporation limits of Cincinnati, and has no intention of moving elsewhere.

"Plaintiff has been required as a condition of admission to the said municipal university to pay non-resident tuition rates, under the interpretation of §4003-20 GC, which reads as follows:

"Sec. 4003-20 GC: Citizens not to be charged. Citizens of such municipalities shall not be charged for instruction in the academic department . . . .

"adopted by the Board of Directors of the said university, to wit: that a "citizen of such municipality" must be a citizen of the United States, whereas plaintiff contends that the above phrase refers to domicile within the municipality only.

"WHEREFORE plaintiff prays for a declaratory judgment setting forth his rights herein, and for such other and further relief as may be equitable, and his costs herein."

Construing the allegations of this petition liberally in favor of the plaintiff, the Court concludes that the defendants' demurrer admits that plaintiff is not only a resident of the City of Cincinnati, but also that he is legally domiciled therein.

The question to be decided is whether a resident alien legally domiciled within the City of Cincinnati is entitled to instruction without charge in the Academic Department of the University of Cincinnati by virtue of the provisions of §4003-20 GC, which is as follows:

"Sec. 4003-20 GC. Citizens not to be charged. Citizens of such municipalities shall not be charged for instruction in the academic department, except in professional courses therein. Such board of directors may charge fees for any purpose to students in other departments and to students in professional courses in the academic department, and may charge fees for purposes other than instruction to students in the academic department. From time to time they may make such university, college or institution free in any or all of its departments to citizens of the county in which it is located.

"The board of directors may receive other students on such terms as to tuition or otherwise as they see fit."

Plaintiff contends that the phrase "citizens of such municipality" means bona fide residents of such municipality who are legally domiciled therein while defendants contend that it means persons possessing United States citizenship who are legally domiciled in such municipality.

Unfortunately, the term "citizen" is often loosely used and

examples may be cited in which the legislature has used the term without necessarily meaning United States citizenship. For instance, §13008 GC provides a penalty for failure or neglect to provide for ones children "living in this state." **Sec. 13021 GC** is as follows:

"Citizenship once acquired in this state by a father or mother of a legitimate or illegitimate child living in this state, for the purpose of this subdivision of this chapter (§§13008 to 13021 GC), shall continue until such child has arrived at the age of sixteen years, provided said child so long continues to live in this state."

It could hardly be argued that the legislature intended to exempt resident aliens from the provisions of this statute. It would also seem unreasonable to suppose that when the legislature enacted §4386 GC empowering Village Marshals to "call upon the citizens to aid him" in supressing riots, disturbances and breaches of the peace, it meant that lawfully domiciled aliens who had filed declarations of their intention to become citizens could not be called upon for such assistance.

Furthermore, if the legislature had intended to require United States Citizenship when it enacted §4003-20 GC, it might easily have spelled out such requirement as it has in so many other enactments. For instance, §8623-4 GC provides that any number of natural persons, not less than three, a majority of whom are citizens of the United States, may form a corporation. **Sec. 8623-98 GC** provides that any number of natural persons, not less than three, a majority of whom are citizens of the United States, may form a non-profit corporation. **Sec. 4785-29 GC** provides that "every citizen of the United States who is of the age of twenty-one years or over, who possesses the qualifications herein required, shall be entitled to vote at all elections."

It is true that when §4003-20 GC was re-enacted in 1943 the legislature, as a part of the same Act (H. B. 217—120 Ohio Laws 475), enacted §4838-2 GC in which it required that the public schools be free to actual **residents** of the school district. It is strenuously argued by counsel for the defendants that in using the term "citizens" in §4003-20 GC and the term "residents" in another section of the same Act, the legislature plainly intended that only citizens of the United States were to be eligible to receive the benefits of the provisions of §4003-20 GC. It is clear that by the use of the term "citizens" in §4003-20 GC, something more than mere residence was intended but it is doubtful that the legislature would concern itself with the question of United States citizenship in dealing with school matters. So far as I can learn it has never done

so in any statute dealing with the subject of education. It would be much more reasonable to infer that by the use of these two terms, the legislature intended that every child of public school age residing within the school district should be entitled to the free use of the public schools regardless of whether its parents were permanent or only temporary residents, whereas free tuition in a municipal university should be provided only to persons who were not only residents but who were actually legally domiciled within the municipality.

In dealing with the subject of education, the legislature has never indicated that it was in any way concerned with national citizenship. On the contrary, it is interesting to note that United States citizenship is not a requirement for special consideration as to tuition in State supported universities and §4863 (a) GC is as follows:

"Tuition for non-residents. No provision of law shall prevent the boards of trustees of Ohio State University, Miami University, or Ohio University, from charging reasonable tuition for the attendance of pupils who are non-residents of the state of Ohio."

The only reported case in Ohio in which similar statutory language has been construed is **State ex rel Owens v. Trustees, 11 Ohio Reports 24** (1841) in which the Supreme Court uses the following language in construing the phrase "citizens of said township" in an Act providing for participation by religious societies in funds produced by the sale of ministerial lands:

"It is to be distributed to the different religious societies in proportion to their numbers; and in ascertaining numbers, all actually belonging, or adhering, to each society, of the age of fifteen years, or more, are to be taken into the account, provided 'they are citizens of said township.'

"Here a question is raised as to the meaning of the word 'citizen' as used in this connection. That the word does not always mean one and the same thing is clear. Thus, we speak of a person as a citizen of a particular place, when we mean nothing more by it than that he is a resident of that place. When we speak of a citizen of the United States, we mean one who was born within the limits of, or who has been naturalized by, the laws of the United States. It can hardly be believed that the legislature, in using the word 'citizen' in this statute, intended to make a distinction between native or naturalized citizens, and resident aliens. Why should such distinction be made? Is there not as much need of religious instruction in the one case as the other? To me it seems clear that the word 'citizen,' as here used, should be held to be synonymous with the word 'resident.' "

A similar conclusion was reached by the Supreme Court of Colorado in the case of Sedgwick v. Sedgwick, 50 Col. 164, 114 Pac. 488 in which one of the matters considered by the Court was an interpretation of the following section of the Divorce Code:

"Section 6. No person shall be entitled to a divorce in this state unless such person shall have been a bona fide resident and citizen of this state for one year prior to the commencement of the action, which fact shall be proven by the evidence of at least one credible witness other than the plaintiff; * * *."

Syllabus 4 of this case is as follows:

"An alien who makes this state his home, in good faith, and has no residence elsewhere, is a citizen within the meaning of the statute (Laws 1893, c. 80, sec. 6; Rev. Stats., sec. 2116), and our courts are open to him to apply for divorce."

In this case the plaintiff's father has declared his intention of becoming a citizen of the United States. He has purchased a home and is engaged in business in the City of Cincinnati. He is an actual bona fide resident of that municipality. His home is here and he has no home elsewhere. He has no intention of leaving Cincinnati. He is a taxpayer of the City of Cincinnati and his taxes presumably help to support the Municipal University at which his son is enrolled as a student. The plaintiff is amenable to the ordinances of the City of Cincinnati and the laws of the State of Ohio and of the United States. He is subject to be drafted into the armed forces of the United States. Indeed, if the plaintiff were not a high school graduate he would not only be eligible to attend the public schools of the City of Cincinnati free of tuition, but, being of compulsory school age, he would, by virtue of the provisions of §4849 **GC, et seq.**, actually be compelled to attend such public schools and accept free tuition.

The intent of the law is said to be its spirit. The spirit of §**4003-20 GC**, in the opinion of this Court, was to provide free tuition in Municipal Universities to persons who are bona fide residents of the municipality who are actually domiciled therein and who, by reason of the payment of taxes, help to support such university. The Court concludes, therefore, that the phrase "citizens of such municipality" as used in §**4003-20 GC** has no reference to United States citizenship and means no more than "bona fide residents legally domiciled within such municipality." Accordingly, the demurrer of the defendants will be overruled.